FILED

January 19 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0856

DA 13-0856

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 14

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TRAVIS MORGAN McALISTER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC 12-157
Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad R. Vanisko, Assistant Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General; Helena, Montana

          John W. Parker, Cascade County Attorney, Joshua A. Racki, Deputy
County Attorney; Great Falls, Montana

Submitted on Briefs:  December 16, 2015
Decided:  January 19, 2016

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 After a three-day trial before the Eighth Judicial District Court, Cascade County, a jury found Travis Morgan McAlister (McAlister) guilty of sexual intercourse without consent, a felony, pursuant to § 45-5-503, MCA (2011). Due to the age of the victim, McAlister was sentenced to 100 years in prison and is not eligible for parole for the first 50 years. He challenges his conviction. We affirm, addressing the following issues:

*1. Did the District Court err by denying McAlister's motions made during trial to dismiss the charge for insufficient evidence?*

*2. Did McAlister's trial counsel provide ineffective assistance by failing to call any expert witnesses?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 This case was put into motion by a call to the child abuse hotline through the division of Child and Family Services, relating that the victim, A.H., had made a disclosure to her grandmother regarding possible sexual abuse. Detective Noah Scott of the Great Falls Police Department received the referral and that same afternoon conducted a forensic interview with A.H., who was four years old at that time. A.H. made several statements regarding McAlister, whom she referred to as "Dad," "Daddy," or "Travis"; he is not her biological father. A.H. told Detective Scott that she and McAlister "watch private movies" and "sometimes get naked on them." A.H. stated that her dad would "kiss her peepee," and that "he just sticks [his peepee] in my peepee," and that sometimes it "hurts my peepee." A.H. also made statements during the interview that were contradictory and nonsensical. When asked where she had sex, A.H. stated that

2

she would have sex at her daycare and "the whole world." She also stated that she had sex with her "brother" (A.H. did not have any brothers at the time), that she would have sex "in that building," and in her closet. Detective Scott also interviewed McAlister, after which McAlister was arrested and charged with one count of sexual intercourse without consent and one count of felony sexual assault, arising out of conduct that allegedly occurred between March 1, 2010, and March 27, 2012.[1]

¶3    At trial, A.H., who was then five years old, testified. While on the stand, she stated that she would watch "sexy movies" while staying at McAlister's house. She stated that "we did the same thing as them [the movies], but I didn't want to." When asked what she did that was on the movies, A.H. answered that "He put his peepee in my mouth and my peepee." As direct examination continued, A.H. repeated this testimony several times. A.H. also testified that she "had sex" with "a friend" at daycare, and "with [her] big frog" in the closet at home.

¶4    The State called four expert witnesses to testify at trial. Dr. Robert Page, a specialist in forensic psychology, testified that, after watching the video of A.H.'s forensic interview with Detective Scott, it was his opinion that A.H.'s behaviors during the interview were "more consistent with a memory of an event that occurred that is attached to an aversion," rather than appearing to be a disclosure of a mere fantasy or coached allegations. Dr. Page further testified that A.H.'s graphic descriptions in the forensic interview of an erect male penis and the act of ejaculation were significant, as a

---

[1] The State later moved to dismiss the count of sexual assault, and only the count of sexual intercourse without consent went to the jury.

3

four year old child would not normally have experienced this, and would be unlikely to fabricate a description in that level of detail, bolstering his opinion that A.H.'s disclosures were not fabricated. Dr. Nancy Maynard performed a physical examination on A.H. shortly after the report was made. Dr. Maynard reported that she found no physical abnormalities, such as scars, skin tags, or other injuries that would be signs that sexual abuse occurred, finding an intact hymen with no signs of past healing. Maynard noted, however, that in the majority of sexual abuse cases, professionals do not find such physical evidence of abuse. Dr. Wendy Dutton testified as to the victimization process, or the process that leads up to sexual abuse of a child and the aftermath of the abuse, and about the ways in which a victim might disclose sexual abuse. Finally, Dr. Charlene Sabin, a behavioral pediatrician, testified that "I find it upsetting that [A.H.'s] child sexual behavior has gotten so intense, so extreme, and so entrenched. . . . It's not in the range of normal child sexual behavior." While she could not give an opinion as to whether A.H. had been sexually abused by McAlister specifically, Dr. Sabin testified that something must have happened to result in A.H.'s behaviors.

¶5 After the State rested, McAlister's counsel moved for dismissal based on insufficient evidence, which the District Court denied. The defense proceeded and McAlister testified on his own behalf. His testimony established that he had a father-like relationship with A.H., and that he would provide childcare for A.H., sometimes overnight. McAlister adamantly denied having sexual intercourse with or sexually assaulting A.H. At the conclusion of his testimony, McAlister's counsel renewed his

motion for dismissal for insufficient evidence, which the District Court again denied. The case was then submitted to the jury, which found McAlister guilty. McAlister appeals.

## STANDARDS OF REVIEW

¶6 We review the denial of a motion to dismiss a criminal charge for insufficient evidence *de novo*. *State v. Swann*, 2007 MT 126, ¶¶ 18-19, 337 Mont. 326, 160 P.3d 511. A motion to dismiss for insufficient evidence is appropriate only if, viewing the evidence in the light most favorable to the prosecution, there is not sufficient evidence upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Rosling*, 2008 MT 62, ¶ 35, 342 Mont. 1, 180 P.3d 1102; § 46-16-403, MCA.

¶7 We address the ineffective assistance of counsel claims as follows:

> Ineffective assistance of counsel claims constitute mixed questions of law and fact which we review *de novo*. To prevail on an ineffective assistance of counsel claim, the defendant must show that: (1) his counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced him. The defendant must satisfy both prongs of the test, and where the defendant makes an insufficient showing as to one prong of the test, it is unnecessary to address the other prong.

*State v. Lindberg*, 2008 MT 389, ¶ 26, 347 Mont. 76, 196 P.3d 1252 (citing *Whitlow v. State*, 2008 MT 140, ¶¶ 9-11, 343 Mont. 90, 183 P.3d 861) (internal citations omitted).

## DISCUSSION

¶8 *1. Did the District Court err by denying McAlister's motions made during trial to dismiss the charge for insufficient evidence?*

¶9    McAlister argues that the evidence presented by the State was not sufficient to convict him and that his motions to dismiss the charge should have been granted. McAlister notes many contradictions and inconsistencies between A.H.'s statement to Detective Scott and her later testimony at trial, including A.H.'s occasional denials that she had ever engaged in sex or even knew what sex was.  He argues that A.H. "never definitively and independently identif[ied] McAlister as having had sexual intercourse with her . . . ," and that the State failed to offer any physical evidence of a crime or that A.H. had even been sexually abused, noting that Dr. Maynard testified that she found no physical signs of scarring or past healing.  McAlister argues that his case "is mired in a sea of insufficient evidence."

¶10    Section 45-5-503(1), MCA (2011), provides that "[a] person who knowingly has sexual intercourse without consent with another person commits the offense of sexual intercourse without consent."  In turn, § 45-2-101(68)(a), MCA (2011), defines "sexual intercourse" as "penetration of the vulva, anus, or mouth of one person by the penis of another person, [or] penetration of the vulva or anus of one person by a body member of another person . . . ."  Instructions submitted to the jury stated that the State was required to prove that McAlister had sexual intercourse with A.H., that McAlister acted knowingly, and that the act of sexual intercourse was without the consent of A.H., although, because A.H. was younger than the age of 16, she was statutorily incapable of giving her consent to sexual intercourse.  See § 45-5-501(1)(a)(ii)(D), MCA (2011).  The State was thus tasked with proving that McAlister had sexual intercourse with A.H., and

6

that he did so knowingly. *See* § 45-2-101(35), MCA (2011) ("a person acts knowingly . . . when the person is aware of the person's own conduct . . . ."). The jury found that all of these elements had been proven beyond a reasonable doubt when convicting McAlister.

¶11 McAlister supports his argument by necessarily focusing on A.H.'s testimony that McAlister did not "touch her peepee" and other like comments. However, A.H. also affirmatively repeated her statement that McAlister had penetrated her several times. After A.H. testified that she would watch "sexy movies" at McAlister's house, and the prosecutor asked A.H. "And what did you do that was on the movies?" A.H. clearly answered "He put his peepee in my mouth and my peepee." A.H. repeated this same phrase almost verbatim in response to another question. Later on during direct examination, the State asked, "Did anyone else besides Travis [McAlister] put his peepee in your peepee?" A.H. responded, "No."

¶12 A.H.'s testimony offers evidence of the necessary elements of the crime of sexual intercourse without consent. Her testimony clearly identified McAlister as the perpetrator and described his actions in sufficient detail to satisfy the statutory definition. Viewing the evidence as a whole and "in the light most favorable to the prosecution," *Rosling*, ¶ 35, we conclude it was entirely possible that a rational jury could have found all the essential elements beyond a reasonable doubt, based upon A.H.'s testimony as a whole. While A.H.'s statements were inconsistent at times and included the whimsical or even fantastical, a rationale jury could well have determined that such statements were

7

characteristic of a four or five year old child, but that the substance of her statements about McAlister were truthful.[2] McAlister's argument challenges the credibility of A.H.'s testimony (her statements "never rose above the level of being ambiguous at best and completely contradictory at worst"), but the "[d]eterminations of the credibility of witnesses and the weight of their testimony are within the exclusive province of the jury, and conflicting testimony does not render the evidence insufficient to support a guilty verdict." *State v. Dewitz*, 2009 MT 202, ¶ 85, 351 Mont. 182, 212 P.3d 1040 (citations omitted). He also argues that a rational jury could not find the elements beyond a reasonable doubt when "the alleged victim simultaneously presents diametrically opposing testimony." To the contrary, "[i]t is within the province of the jury to weigh the evidence based on the credibility of the witnesses and determine which version of events should prevail," even when the conflict arises from the victim's testimony. *State v. Trull*, 2006 MT 119, ¶ 20, 332 Mont. 233, 136 P.3d 551 (citing *State v. Weigand*, 2005 MT 201, ¶ 7, 328 Mont. 198, 119 P.3d 74); *State v. Hicks*, 2006 MT 71, ¶¶ 25-27, 331 Mont. 471, 133 P.3d 206; *State v. Kelley*, 2005 MT 200, ¶ 22, 328 Mont. 187, 119 P.3d 67 ("a jury is at liberty to believe all, a part of, or none of the testimony of any witness.").

¶13 McAlister emphasizes that there was no physical evidence offered to prove that A.H. had been penetrated. However, Dr. Maynard testified that this is common in cases of alleged sexual abuse. We have previously upheld a conviction of sexual intercourse without consent based on the identification of the defendant by a child victim that was

---

[2] A.H.'s competency as a witness is not an issue herein.

not confirmed by physical evidence. *See State v. Osborne*, 1999 MT 149, ¶ 39, 295 Mont. 54, 982 P.2d 1045 ("While there is no direct, physical evidence which links [the defendant] to the crime, the jury could have reasonably concluded from the evidence that [the victim] identified [the defendant] as the person who penetrated her . . . ."). The lack of physical evidence does not negate the sufficiency of A.H.'s oral testimony.[3]

¶14 The District Court did not err in denying McAlister's motions to dismiss for insufficient evidence.

¶15 *2. Did McAlister's trial counsel provide ineffective assistance by failing to call any expert witnesses?*

¶16 McAlister argues that his appointed trial counsel was ineffective because he failed to call an independent expert witness to rebut the expert testimony offered by the State. Before undertaking review, we must first determine whether this issue is properly before us on direct appeal. "[W]here ineffective assistance of counsel claims are based on facts of record in the underlying case, they must be raised in the direct appeal; conversely, where the allegations of ineffective assistance of counsel cannot be documented from the record in the underlying case, those claims must be raised by petition for postconviction relief." *Hagen v. State*, 1999 MT 8, ¶ 12, 293 Mont. 60, 973 P.2d 233.

¶17 The record indicates that McAlister's counsel filed a notice of an expert witness one week prior to trial. The District Court issued an order that permitted McAlister to

---

[3] McAlister also briefly suggests that the District Court's statement, made when denying his motion to dismiss for insufficiency of the evidence, that the court was "not in a position to judge whether or not it's beyond a reasonable doubt, it's just simply whether the evidence is sufficient," indicates that the court applied the incorrect legal standard when deciding the issue. However, we discern no substantive error in the statement.

9

add Dr. Cindy Miller to his list of witnesses. However, defense counsel did not call Dr. Miller at trial, and the record mentions only that she was expected to testify regarding "child psychology, child development[,] and the reliability of the victim's testimony." The bare fact that McAlister's counsel did not call Dr. Miller or another expert witness to testify is not sufficient by itself to establish that his performance was deficient, and the record is silent as to the reasons why defense counsel made these decisions. This Court will not speculate as to the reasons for this action. *See State v. Lewis*, 2007 MT 16, ¶ 21, 335 Mont. 331, 151 P.3d 883 ("We refuse to speculate on counsel's errors in light of the presumption favoring a finding that counsel performed effectively. A silent record fails to rebut the strong presumption that counsel provided reasonable professional assistance.") (internal citations omitted). Because the basis of this ineffectiveness claim is not clear from the record, it is more properly brought by a petition for postconviction relief. *See Hagen*, ¶ 12.

¶18   Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA