FILED

05/09/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0394

DA 15-0394

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 110

STATE OF MONTANA,

Plaintiff and Appellee,

v.

MICHAEL ROBERT STUTZMAN,

Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 13-807
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Chief Appellant Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

Scott Twito, Yellowstone County Attorney, Christopher Morris, Mary
Leffers Barry, Deputy County Attorneys, Billings, Montana

Submitted on Briefs:   March 8, 2017

Decided:   May 9, 2017

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Michael Stutzman appeals his conviction of sexual assault against R.W., the eight-year-old daughter of Stutzman's former girlfriend, Angela. The jury acquitted Stutzman of a separate charge against K.W., R.W.'s twin sister. The court later denied Stutzman's motion for a new trial and sentenced him to prison.

¶2 We address the following issues on appeal:

1. *Whether the prosecutor violated Stutzman's right to a fair trial by telling the jury in closing argument that, in order to find Stutzman not guilty, it would have to conclude that R.W. and K.W. had lied during their testimony;*

2. *Whether the District Court committed plain error when it failed to give a specific unanimity instruction to the jury on the sexual assault charge after R.W. testified to two alleged sexual assaults; and*

3. *Whether the District Court erred in not disclosing to the defense information from the medical and counseling records that it reviewed in camera.*

¶3 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 Stutzman began living with Angela, R.W., and K.W. in May 2013. Shortly after he moved in with them, R.W. and K.W. both disclosed to their mother and their school counselor, Tara Sylvester, that Stutzman had inappropriately touched them. The police arrested Stutzman, and the State charged him with felony sexual assault against R.W. and felony sexual intercourse without consent against K.W.

¶5 R.W. testified at trial that Stutzman had touched her inappropriately on two occasions. The first incident occurred while R.W. was sitting on Stutzman's lap at home. She stated that Stutzman touched her "in the wrong places," which she described as her

2

"private areas." R.W. told her mother that Stutzman had touched the inside of her thigh, which made her feel "weird." Angela addressed the matter with Stutzman, who was apologetic but denied that anything inappropriate occurred.

¶6 The second incident occurred in a tent in the family's backyard over Memorial Day weekend. R.W. had invited several friends for a sleepover, and Stutzman volunteered to sleep in the tent with the children to supervise them. R.W. claimed that during the night Stutzman "put his hands in [her] pants and started rubbing [her] in the wrong place." She explained that Stutzman had touched her "private area," her "cover-up area," or where she goes "pee." K.W. testified that, sometime during the same weekend, Stutzman had penetrated her vagina with his finger while she was sleeping. K.W. told R.W. the next morning what happened, and R.W. said they needed to tell their mom.

¶7 After R.W. and K.W. told their mother about these incidents, Angela kicked Stutzman out of the house. The children then spoke with Sylvester. Sylvester testified at trial that the children had received counseling services prior to the May 2013 incidents because they met the criteria for being "seriously emotionally disturbed." R.W. suffered from "ADHD and oppositional defiant behaviors," and K.W. suffered from "ADHD and anxiety disorder." Based on her discussions with the children, Sylvester believed that Stutzman had sexually abused them, and she contacted the police.

¶8 Shortly before trial, Stutzman sought a continuance in order to obtain additional medical and counseling records concerning the girls. The court conducted an in camera review of the children's medical records from the Billings Clinic and of their counseling records from Altacare, Sylvester's employer. The court concluded that the records

contained no exculpatory evidence of Stutzman's behavior. It declined to disclose any of the records, and trial proceeded as scheduled.

¶9 Stutzman's theory at trial was that R.W. and K.W. had fabricated their allegations in order to get him out of the house. During closing argument, defense counsel referred to Angela's testimony, stating, "'If we get him out of here, we're golden,' that's what mom said. Those words just jump out at you, because they provide a motive for these girls to tell the stories that they did." He suggested that the girls did not understand the repercussions of their alleged lies about Stutzman, stating that "part of the understanding whether or not they have to tell the truth is an understanding of what happens if they don't. They know that they'll get in trouble, but do they know the consequences of what could happen to this person, to Mike? Do they truly understand that?" In the State's rebuttal argument, the prosecutor said, "A not guilty verdict means you don't believe [K.W.] and [R.W.]. It means you think they're lying." Stutzman objected, saying, "That's not what that means." The court replied, "It's closing argument." The prosecutor continued her argument without further comment on the point.

¶10 The court instructed the jury that it must unanimously "agree that the defendant is either guilty or not guilty in order to reach a verdict." It provided a definition of sexual assault and listed the elements of sexual assault that the State was required to prove. It did not instruct, however, that the jury had to agree unanimously on at least one specific criminal act that Stutzman had committed in order to convict him of sexual assault. Stutzman neither objected to the court's instructions nor offered a specific unanimity instruction.

4

¶11 The jury found Stutzman not guilty of sexual intercourse without consent against K.W. and found him guilty of sexual assault against R.W. Stutzman moved for a new trial on the sexual assault conviction, arguing that the State's comment during its rebuttal closing argument was so improper and prejudicial that it violated his constitutional right to a fair trial.

¶12 The court denied Stutzman's motion for a new trial. It reasoned, "Once defense counsel argued that the victims had a motive to lie and did not understand the repercussions of their alleged lies, rebuttal by the State was not prejudicial in the comments of the prosecutor. No error attaches when the prosecutor's actions are provoked by defense counsel." The court reasoned that Stutzman provoked this comment by referencing the motive of the victims to lie—to get Stutzman out of the house. The court sentenced Stutzman to twenty-five years in prison with twenty years suspended and required that he be designated as a Level 2 Sexual Offender.

## STANDARDS OF REVIEW

¶13 We generally review a district court's decision to grant or deny a motion for new trial for an abuse of discretion. *State v. Morse*, 2015 MT 51, ¶ 18, 378 Mont. 249, 343 P.3d 1196. We likewise review a district court's decision regarding jury instructions for an abuse of discretion, so long as the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Dobrowski*, 2016 MT 261, ¶ 6, 385 Mont. 179, 382 P.3d 490. When a defendant raises the plain error doctrine to request our review of issues that the defendant did not raise before the district court, our review is discretionary. *State v. Daniels*, 2003 MT 247, ¶ 20, 317 Mont. 331, 77 P.3d 224. We review a district

court's grant or denial of discovery for an abuse of discretion. *State v. Duffy*, 2000 MT 186, ¶ 18, 300 Mont. 381, 6 P.3d 453.

## DISCUSSION

¶14    1. *Whether the prosecutor violated Stutzman's right to a fair trial by telling the jury in closing argument that, in order to find Stutzman not guilty, it would have to conclude that R.W. and K.W. had lied during their testimony.*

¶15    Stutzman asserts that the prosecutor's argument "diluted the presumption of innocence and shifted the burden of proof" to him.  He argues that it constituted prosecutorial misconduct and that it was highly prejudicial, entitling him to a new trial.

¶16    The Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee criminal defendants the right to a fair trial.  *State v. Hayden*, 2008 MT 274, ¶ 27, 345 Mont. 252, 190 P.3d 1091.  To determine whether a defendant is entitled to a new trial by reason of prosecutorial misconduct, we consider "whether the prosecutor's comments were improper" and whether they "prejudiced the defendant's right to a fair trial."  *State v. Pierce*, 2016 MT 308, ¶ 24, 385 Mont. 439, 384 P.3d 1042 (citing *State v. Lindberg*, 2008 MT 389, ¶ 25, 347 Mont. 76, 196 P.3d 1252).  Prejudicial error occurs only where the error affected the outcome of the trial beyond a reasonable doubt.  *State v. Ingraham*, 1998 MT 156, ¶ 50, 290 Mont. 18, 966 P.2d 103.

¶17    Stutzman argued in closing that R.W. and K.W. fabricated the allegations against him as a way to get him out of their home, and he questioned the children's ability to understand the repercussions of lying.  The prosecutor began her rebuttal argument by discussing reasonable doubt and the State's burden of proof.  She proceeded to discuss the evidence, responding to defense counsel's arguments.  She then stated that a not guilty

6

verdict would require the jury to believe that R.W. and K.W. were lying. After Stutzman objected, she did not discuss this contention further. Instead, the prosecutor reviewed the evidence and questioned how it would support Stutzman's assertion that K.W. and R.W. had a motive to lie, pointing to specific evidence that suggested the girls did not lie on the witness stand.

¶18 The burden is on the defendant to show that the prosecutor's improper comments prejudiced his right to a fair trial. *Lindberg*, ¶ 25. In determining whether prejudice occurred, we view the improper comments "in the context of the case in its entirety." *Lindberg*, ¶ 25. "We evaluate a prosecutor's statements during closing argument in the context of the argument as a whole." *State v. Walton*, 2014 MT 41, ¶ 13, 374 Mont. 38, 318 P.3d 1024; *accord State v. Martin*, 2001 MT 83, ¶ 68, 305 Mont. 123, 23 P.3d 216 (holding that a prosecutor's improper comments were not prejudicial "in light of all the surrounding circumstances, including the context in which the remarks were made").

¶19 Based on our review of the record, we cannot conclude that, even if improper, the prosecution's isolated remark affected the outcome of the trial "beyond a reasonable doubt." *Ingraham*, ¶ 50. The prosecutor's closing argument and rebuttal argument centered on the evidence presented at trial and how it proved Stutzman's guilt. The prosecutor made the comment about the girls' lying in rebuttal, after Stutzman suggested that R.W. and K.W. had fabricated their allegations. Viewing the prosecution's comment "in light of all the surrounding circumstances, including the context in which the remarks were made," *Martin*, ¶ 68, we conclude that the District Court did not abuse its discretion in denying Stutzman's motion for a new trial on this ground. Stutzman has not met his

7

burden of showing that the prosecutor's statement prejudiced his right to a fair trial. *Lindberg*, ¶ 25. We therefore do not address whether the comments were improper on their face. *See Pierce*, ¶ 24.

¶20     2. *Whether the District Court committed plain error when it failed to give a specific unanimity instruction to the jury on the sexual assault charge after R.W. testified to two alleged sexual assaults.*

¶21     Stutzman argues that the District Court erred when it failed to instruct the jury that it must agree unanimously that Stutzman committed a specific underlying criminal act in order to convict him of sexual assault. He contends that the State presented two separate incidents in which Stutzman allegedly sexually assaulted R.W.—one that occurred while she was sitting on his lap, and another that occurred during the backyard campout. Stutzman contends that although the jury unanimously found him guilty of sexual assault against R.W., the jurors might not have unanimously concluded that the State proved at least one of the two particular acts. This, in Stutzman's view, creates uncertainty about the unanimity of the jury's verdict and warrants a new trial. Stutzman argues that we should review the court's failure to give a specific unanimity instruction for plain error.

¶22     A criminal defendant has a constitutional right to a unanimous jury verdict. *State v. Vernes*, 2006 MT 32, ¶ 21, 331 Mont. 129, 130 P.3d 169. Unanimity "requires substantial agreement as to the principal factual elements underlying a specific offense." *Vernes*, ¶ 21. When the State charges multiple criminal acts within one count, and when "a genuine possibility exists that different jurors will conclude a defendant committed disparate illegal acts subsumed under the single count," the court must provide a specific unanimity instruction directing the jurors "to reach a unanimous verdict on at least one specific

8

criminal act before finding guilt for the multiple-act count." *State v. Harris*, 2001 MT 231, ¶ 12, 306 Mont. 525, 36 P.3d 372, *abrogated in part on other grounds by Robinson v. State*, 2010 MT 108, ¶ 12 n.1, 356 Mont. 282, 232 P.3d 403.

¶23 Because Stutzman did not object to the court's jury instructions or offer a specific unanimity instruction on the sexual assault charge, he did not preserve that issue for appeal. We generally do not address issues raised for the first time on appeal. *State v. Favel*, 2015 MT 336, ¶ 13, 381 Mont. 472, 362 P.3d 1126. We may, however, "choose to invoke the common law plain error doctrine where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Favel*, ¶ 13. We invoke plain error review "sparingly, on a case-by-case basis." *Favel*, ¶ 23. When the circumstances of a case do not warrant application of the plain error doctrine, we need not address the merits of the alleged error. *See State v. Lawrence*, 2016 MT 346, ¶¶ 11-12, 386 Mont. 86, 385 P.3d 968; *State v. Thorp*, 2010 MT 92, ¶ 25, 356 Mont. 150, 231 P.3d 1096.

¶24 Trial on the charge that Stutzman sexually assaulted R.W. focused on the incident that allegedly occurred in the tent. In both its opening and closing statements, the defense referred only to the incident in the tent—not the touching alleged to have occurred while R.W. sat on Stutzman's lap—as the basis for the sexual assault charge. In the State's closing argument, the prosecutor stated, "[R.W.] told you, 'He stuck his hands in my pants and he rubbed my private' . . . She called it her cover-up area." It later stated, "[Stutzman] waited until [R.W.] was asleep, and then he stuck his hands down her pants." These were

clear references to the incident in the tent. The prosecutor framed the incident on Stutzman's lap—in which R.W. alleged that he inappropriately touched her over her clothes—as an opportunity to test the potential consequences of his actions. When R.W. told her mom about this incident, Stutzman claimed it was an accident. The prosecutor argued that, after Stutzman did not face any consequences for this action, he "progressed" to inappropriately touching R.W. underneath her clothes in the tent. The prosecutor's comments about the incident on Stutzman's lap were directed toward her argument that his behavior escalated to ultimately assaulting R.W. in the tent.

¶25 The record therefore demonstrates that the parties considered the tent as the basis for the sexual assault charge. Defense counsel's failure to offer a specific unanimity instruction undoubtedly reflects this understanding. The court did not plainly err when it did not *sua sponte* give a specific unanimity instruction in light of the parties' presentation of the case. The circumstances of this case thus do not warrant application of the plain error doctrine. *See Lawrence*, ¶¶ 11-12; *Thorpe*, ¶ 25.

¶26 3. *Whether the District Court erred in not disclosing to the defense information from the medical and counseling records that it reviewed in camera.*

¶27 After the District Court conducted an in camera review of the sealed documents from the Billings Clinic and Altacare, it disclosed none of the documents to counsel for the parties. Stutzman argues that this Court must review the records to ensure that the District Court did not err in refusing to disclose these documents to the defense. If the documents contain "favorable and material information" that the court failed to disclose, Stutzman argues that he should receive a new trial. He argues that any information that could weaken

10

R.W.'s, Angela's, or Sylvester's credibility as witnesses or any medical documents that could support Stutzman's defense that he did not sexually assault R.W. would constitute "favorable and material information."

¶28 A defendant has a right to discover exculpatory evidence. *Duffy*, ¶ 19. Exculpatory evidence includes that which is favorable to the accused and material either to guilt or to punishment. *State v. Colvin*, 2016 MT 129, ¶ 12, 383 Mont. 474, 372 P.3d 471; *State v. Ellison*, 2012 MT 50, ¶¶ 15-16, 364 Mont. 276, 272 P.3d 646. We do not focus our inquiry "on whether the evidence is admissible or inadmissible, but rather whether the evidence is favorable to the defense and could have affected the outcome of the proceedings." *State v. Weisbarth*, 2016 MT 214, ¶ 24, 384 Mont. 424, 378 P.3d 1195. "Favorable" evidence includes evidence that has the "potential to lead directly to admissible exculpatory evidence." *Weisbarth*, ¶ 24.

¶29 When a defendant requests a crime victim's confidential records, the district court has a "duty to conduct an in camera review to ascertain whether there [is] any exculpatory evidence in the files." *State v. Johnston*, 2014 MT 329, ¶ 9, 377 Mont. 291, 339 P.3d 829. If the trial court finds records that constitute potentially exculpatory evidence, "the district court must balance the defendant's need for exculpatory evidence against the privacy interest of the victim." *Duffy*, ¶ 21. "If confidential information is not exculpatory or necessary for the preparation of the defense, defense counsel's right to review the information is outweighed by the victim's right to confidentiality." *Duffy*, ¶ 21. Ultimately, to mandate reversal of the conviction, a defendant "must prove 'that there is a reasonable probability that had the information been provided, the result would have been

different or[,] stated another way, is it a "verdict worthy of confidence"?'" *State v. Ellenburg*, 2000 MT 232, ¶ 47, 301 Mont. 289, 8 P.3d 801 (quoting *Kills on Top v. State*, 273 Mont. 32, 42, 901 P.2d 1368, 1374 (1995)).

¶30    We have conducted a complete review of the Billings Clinic and Altacare records that the District Court reviewed in camera.  The Billings Clinic records contain medical documents for R.W. and K.W. and include reports from two forensic examinations conducted on June 12, 2013.  Both reports were included in R.W.'s medical file and both are identified as a report of her examination.  The first report describes an "[a]bnormal vaginal exam . . . compatible with blunt force trauma."  The second report describes a "[n]ormal vaginal examination" which "neither denies nor confirms sexual abuse."  The reports make it apparent—particularly from the patients' descriptions of the alleged incidents of sexual assault—that the report of the abnormal examination pertains to R.W. and that the report of the normal examination pertains to K.W.  Nonetheless, due to the fact that both reports were in R.W.'s file and under her name, the District Court should have disclosed these records to the defense.  One of the reports was potentially exculpatory, and disclosure would have afforded Stutzman the opportunity to question the examining physician and to clarify the discrepancy.

¶31    Yet even if Stutzman had been able to use the reports at trial to argue that the report describing a "[n]ormal vaginal examination" pertained to R.W., the absence of physical evidence of penetration "neither denies nor confirms sexual abuse," as noted in the report. *See State v. McAlister*, 2016 MT 14, ¶¶ 4, 13, 382 Mont. 129, 365 P.3d 1062 (holding that the evidence to convict the Defendant of sexual intercourse without consent was sufficient

12

despite medical examination results showing no physical evidence of penetration). Taken together, particularly in light of the abnormal findings on the report that correlates most likely with R.W., we are unable to conclude that the reports contained exculpatory information material to Stutzman's guilt or innocence. Instead, we conclude that their disclosure would not have "affected the outcome of the proceedings." *Weisbarth*, ¶ 24.

¶32 The Altacare documents include notes and evaluations from counselors, including Sylvester, regarding R.W.'s and K.W.'s mental and behavioral health. Some of these documents describe R.W.'s recounting of Stutzman's sexual assault in the tent. Another document—a "Psycho Educational Group Note" completed by two counselors, apparently including Sylvester—states that R.W. "appeared to not be too fond of her mom's new boyfriend," a probable reference to Stutzman.

¶33 Assuming that one or more of the Altacare notes may have had relevance and potential utility to the defense, we are confident that disclosure would not have "affected the outcome of the proceedings." *Weisbarth*, ¶ 24. R.W. testified that Stutzman sexually assaulted her in the tent. R.W. told her mother about the incident, her mother kicked Stutzman out of the house as a result, R.W. spoke with Sylvester about the incident shortly thereafter, and R.W. seemed, in Sylvester's words, "just not herself, very quiet, withdrawn." Angela stated during cross-examination that, upon R.W. and K.W. telling her about Stutzman's alleged abuse, she initially thought they "might have made this up."

¶34 The Altacare documents containing R.W.'s descriptions of the incident in the tent, while relevant to the issue at trial, only verify R.W.'s testimony. As such, they would not

have constituted "favorable" evidence for Stutzman and were therefore not exculpatory. *Weisbarth*, ¶ 24.

¶35    The Psycho Educational Group Note stating that R.W. was not "too fond" of Stutzman constitutes potentially favorable evidence for the defense, and it too should have been disclosed.  Stutzman could have used this note to cross-examine R.W. on her sentiments toward him.  The District Court abused its discretion by failing to produce this document. *Duffy*, ¶ 18.  But again we conclude that the error is not ground for reversal because it would not have affected the outcome of the case.  Stutzman had ample opportunities to probe this topic at trial.  Defense counsel solicited testimony from Angela that she initially believed her children might have fabricated the allegations against Stutzman, and the defense argued in closing that the children made up the allegations in order to get Stutzman out of the house.  That R.W. was not "too fond" of Stutzman would not have substantially strengthened the evidence Stutzman used to argue about R.W.'s motive to lie.  This single comment to her counselors did not prove fabrication or show that R.W. was hostile or vindictive.  On the strength of the record as a whole, disclosure of the Altacare documents would not have "affected the outcome of the proceedings." *Weisbarth*, ¶ 24.

¶36    The verdict against Stutzman is a "verdict worthy of confidence," *Ellenburg*, ¶ 47, and the District Court's failure to disclose these records does not warrant a new trial.

## CONCLUSION

¶37    The prosecution's statement to the jury during its rebuttal argument did not violate Stutzman's right to a fair trial.  The District Court did not err in failing to give a specific

14

unanimity instruction on the sexual assault charge absent a request by the defense. Finally, the District Court's refusal to disclose medical records from the Billings Clinic or counseling records from Altacare did not deprive Stutzman of a fair trial. The judgment is affirmed.


/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE