FILED

09/05/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0604

DA 15-0604

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 215

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

EDWARD MITCHELL,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 14-962
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Chief Appellate Defender, Koan Mercer, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

            Scott Twito, Yellowstone County Attorney, Christopher A. Morris,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  August 2, 2017

Decided:  September 5, 2017

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Edward Mitchell (Mitchell) was charged with and tried for one count of assault with a weapon and one count of aggravated assault upon Tanner Conway, and one count of assault with a weapon upon Heather Conway. After a jury trial, Mitchell was convicted of assault with a weapon upon Heather, and acquitted of the two counts involving Tanner. Mitchell appeals his conviction. We affirm, addressing the following issues:

*1. Did defense counsel provide ineffective assistance by failing to request a bystander justifiable use of force jury instruction?*

*2. Did the District Court impose illegal parole conditions?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2     On November 19, 2014, police responded to an emergency call at the residence of Paula and Jeff Comer. Comers' daughter, Heather Conway, and her husband, Tanner Conway, lived with Comers and slept in a second-floor bedroom. Additionally, Comers' other daughter, Courtney Comer, and her boyfriend, Mitchell, lived with them and slept in a basement bedroom.

¶3     The emergency call was spawned by an altercation, which eventually involved the entire family. Mitchell and Courtney began the day with an argument and continued squabbling throughout the day. Mitchell got drunk and high, returned home later in the day, and passed out in the kitchen. Courtney arrived home after work, and found Mitchell passed out and covered in vomit. She woke him and cleaned him; thereafter, they commenced a loud verbal argument. Meanwhile, Tanner and Heather were attempting to sleep in their upstairs bedroom, and, at one point, Tanner went downstairs to ask Mitchell

and Courtney to be quiet. Mitchell began to argue with Tanner, stating he had never liked Tanner and calling him a "honky" and a "cracker." In response, Tanner called Mitchell a "nigger." The verbal fight between Tanner and Mitchell escalated until Tanner headed back upstairs.

¶4 Meanwhile, Heather, Courtney, and Jeff tried to physically remove Mitchell from the house. Tanner returned to the landing at the base of the stairs with a baseball bat and shouted at Mitchell, telling him to leave. While Heather called emergency services, Courtney and Jeff tried to shove Mitchell out the door, but he pushed his way into the kitchen and grabbed a knife. Courtney and Jeff disarmed Mitchell. Paula entered the fray and told Mitchell to leave. However, instead of leaving, Mitchell grabbed a second knife and engaged Tanner. Courtney and Heather placed themselves between Tanner and Mitchell. In the ensuing fight, Mitchell cut Heather with the knife, stabbed Tanner in the chest, and bit Tanner's finger. Tanner hit Mitchell with the baseball bat. Their fight ranged from the kitchen, down the basement stairs, and back up the stairs. Finally, Courtney and Heather shoved Mitchell out the front door. Locked out of the house, Mitchell began to pound on the door and shout threats until police arrived.

¶5 Mitchell was charged with one count of assault with a weapon and one count of aggravated assault upon Tanner, and one count of assault with a weapon upon Heather, all felonies. Mitchell asserted the defense of justifiable use of force. Defense counsel did not seek, and the jury was not given, any instructions designating Heather as a "bystander" or addressing her status as such. The jury found Mitchell guilty of assaulting Heather with a

3

weapon, and acquitted him of the two charges involving Tanner. Mitchell appeals, primarily challenging the effectiveness of his counsel regarding the jury instructions.

## STANDARD OF REVIEW

¶6     Ineffective assistance of counsel claims are mixed questions of fact and law, which we review *de novo*. *State v. Whitlow*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861 (citing *State v. Racz*, 2007 MT 244, ¶ 13, 339 Mont. 218, 168 P.3d 685).

¶7     Criminal sentences are reviewed for legality. *State v. Tam Thanh Le*, 2017 MT 82, ¶ 7, 387 Mont. 224, 392 P.3d 607 (citing *State v. Patterson*, 2016 MT 289, ¶ 9, 385 Mont. 334, 384 P.3d 92).

## DISCUSSION

¶8     *1. Did defense counsel provide ineffective assistance by failing to request a bystander justifiable use of force jury instruction?*

¶9     The State argues the record does not indicate why trial counsel did not request an instruction applying Mitchell's justifiable use of force defense to an injured bystander, and thus, the ineffective assistance of counsel claim should instead be addressed in a postconviction proceeding. However, because we determine there was no ineffectiveness, regardless of counsel's reasons for not requesting the instruction, we take up the merits of the claim for reasons of efficient resolution and judicial economy. *See State v. Aker*, 2013 MT 253, ¶ 34, 371 Mont. 491, 310 P.3d 506.

¶10    To prevail on an ineffectiveness claim, the defendant must satisfy the two-pronged *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The defendant must prove "his counsel's performance was deficient or fell below an objective

4

standard of reasonableness and establish prejudice by demonstrating a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Williams*, 2015 MT 247, ¶ 20, 380 Mont. 445, 358 P.3d 127 (citing *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, 97 P.3d 1095). If a petitioner fails to establish either prong, we need not address both prongs. *Williams*, ¶ 20 (citing *Golden v. State*, 2014 MT 141, ¶ 15, 375 Mont. 222, 326 P.3d 430).

¶11 Mitchell argues his trial counsel provided ineffective assistance by failing to request a bystander instruction directing jurors that, if they transferred Mitchell's criminal intent from stabbing Tanner to cutting Heather, then they must also transfer his self-defense justification as well. In other words, Mitchell argues the jury should have been explicitly instructed that Mitchell's justifiable use of force defense applied to the count involving Heather.

¶12 Mitchell's argument is premised upon his interpretation of the State's theory offered to the jury. His briefing states: "The State's theory of guilt as to the assault on Heather was that although Edward did not mean to cut Heather, he was guilty just the same because he had done so while meaning to stab her husband Tanner." Mitchell claims the State sought and received a "transferred intent instruction," Instruction #29, which enveloped this theory. He further asserts that "based upon that transfer of intent mechanism, the jury found [Mitchell] guilty of assault for an undisputedly unintentional cut to Heather's finger." Consequently, his briefing offers extensive authority concerning the proposition that a justifiable use of force defense must also transfer with charges involving "innocent

bystanders" who are injured by the defendant. *See, i.e., California v. Mathews*, 91 Cal. App. 3d 1018, 1024, 154 Cal. Rptr. 628, 631-32 (1979) ("[T]he doctrine of self-defense is available to insulate one from criminal responsibility where his act, justifiably in self-defense, inadvertently results in the injury of an innocent bystander.").

¶13    However, Mitchell's interpretation of the State's theory, including his assumption that Heather was a bystander, conflicts with the law given to the jury in the instructions. Mitchell uses a partial quote from Instruction #29 to imply the jury was instructed concerning the transfer of his criminal intent to injure Tanner to Heather. However, a complete reading of Instruction #29 indicates otherwise. Instruction #29 explained that Mitchell could be convicted of assaulting Heather even if the particular injury she sustained was not within Mitchell's contemplation or purpose, if the result "involves the same kind of harm or injury as contemplated but . . . was different or occurred in a different way."[1] Thus, the instruction permitted the jury to convict Mitchell of assaulting Heather if Heather had sustained a similar kind of injury, even if it was not the particular harm Mitchell had contemplated when acting. Instruction #29 concerned the transfer of intent to cause the *injury* originally contemplated to the *injury* actually inflicted. It was not about the transfer

---

[1] Instruction #29 stated, in full: "If purposely or knowingly causing Assault with a Weapon against [Heather] was not within the contemplation or purpose of the Defendant, either element can nevertheless be established if the result involves the same kind of harm or injury as contemplated but the precise harm or injury was different or occurred in a different way, unless the actual result is too remote or accidental to have a bearing on the Defendant's liability or on the gravity of the offense."

6

of intent to injure the *party* originally contemplated to the *party* actually injured. Instruction #29 solely concerned Heather, not Tanner.

¶14    In actuality, Mitchell is attempting to challenge his counsel's actions regarding an instruction proposed by the State and labelled in the record as Instruction #30, but which was never given to the jury, as Mitchell acknowledges.[2]  Proposed Instruction #30 was broader in scope than Instruction #29 and addressed, *inter alia*, the transfer of intent when "the result differs from that contemplated only in respect that a different *person* . . . is affected." (Emphasis added.)  This instruction would have enveloped a theory transferring an intent to assault Tanner to Heather, but because the instruction was not given, the jury was never provided the option of deciding the case under this theory.  Rather, in what may have been a lost opportunity by the State, the jury was instructed to decide the three counts "straight up" as separate, independent counts, with separate verdict forms for each:  two assault counts involving Tanner, and one assault count involving Heather.  Under the instructions, Heather was never deemed an innocent bystander.  This became the law of the case, despite any trial arguments made to the contrary.  *See State v. Schmidt*, 2009 MT 450, ¶¶ 69-70, 354 Mont. 280, 224 P.3d 618.  The jury was separately instructed on each of the three counts, with the elements of assault with a weapon upon Heather set forth in Instruction #16.  The jury was likewise instructed on Mitchell's defense of justifiable use of force.  The jury was thus asked to decide whether Mitchell had purposely or knowingly caused bodily injury to Heather with a weapon, and whether he had used force justifiably.

---

[2] Instruction 30 is marked as "given," but the transcript demonstrates it was never read to the jury.

The jury obviously rejected Mitchell's positions that he had either unintentionally injured Heather or had used force against her justifiably, and convicted him on that count. As the prosecutor argued, Heather received a knife wound to her hand "because she blocked [the knife], otherwise it would have impaled itself on her chest." Regarding the counts involving Tanner, the jury apparently accepted Mitchell's justifiable use of force defense and acquitted him.

¶15 Consequently, defense counsel could not have been ineffective for failing to ask for an instruction to supplement a theory that the State did not preserve for the jury's consideration under the law of the case. Mitchell has not established that his counsel's performance "was deficient or fell below an objective standard of reasonableness" under the first prong of *Strickland*. *Williams*, ¶ 20.

¶16 *2. Did the District Court impose illegal parole conditions?*

¶17 Mitchell was sentenced to ten years at the Montana State Prison, with three years suspended. The judgment entered by the District Court states, "It is further ordered that for any period of community supervision, the following conditions of probation will apply . . . ." This phrase was followed by a list of 35 conditions. Mitchell contends the District Court violated its statutory sentencing authority by effectively imposing parole conditions by employing the language "for any period of community supervision." The State replies the District Court did not impose illegal parole conditions because the statement "for any period of community supervision" was qualified by the language that followed applying "conditions of probation." We agree. The District Court specified it

was imposing "conditions of probation," which will apply during any period of community supervision during the suspended portion of Mitchell's sentence.

¶18    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR