FILED

August 18 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0554

DA 13-0554

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 247

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JARED ROBERT WILLIAMS,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                     In and For the County of Missoula, Cause No. DC 11-535
                     Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Wade Zolynski, Chief Appellate Defender, Kristen L. Larson, Assistant
           Appellate Defender, Helena, Montana

      For Appellee:

           Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
           Attorney General, Helena, Montana

           Kirsten H. Pabst, Missoula County Attorney, A. Shaun Donavan, Deputy
           County Attorney, Missoula, Montana

Submitted on Briefs:  July 1, 2015
Decided:  August 18, 2015

Filed:

                                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Jared Robert Williams appeals from the judgment entered by the Fourth Judicial Court, finding him guilty of one count of theft, a felony. We affirm, addressing the following issues on appeal:

¶2 1. *Did the District Court commit plain error by failing to instruct the jury that the State was required to prove Williams acted with the purpose to deprive?*

¶3 2. *Did Williams' counsel render ineffective assistance by failing to object to the erroneous jury instruction?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 T.W.'s mother, and then his father, passed away, leaving him orphaned at age thirteen. Under his father's will, custody of T.W. was to pass to T.W.'s paternal uncle, Carl, but Carl and his wife were then taking care of a special needs foster child and felt they were unable to care for T.W. As a result, Carl deferred to his sister Debra, who served as T.W.'s guardian and conservator for nearly a year until she suffered serious injuries in an automobile accident. Because of her inability to care for T.W., her son Jared Williams assumed custodial responsibility for T.W. in September 2009. T.W. began living with Williams' family, which consisted of Williams, his wife, and two daughters.

¶5 During the time Williams acted as his guardian and conservator, T.W. received $879 per month in Social Security survivor benefits. Williams calculated his household's expenses to be $2,100 per month, and attributed one-third of those expenses to T.W. Accordingly, Williams withdrew $700 per month from T.W.'s Social Security account.

¶6     T.W. also inherited a one-sixth share of his maternal grandmother's estate, including two snowmobiles and trailers valued at $2,000 and cash in the amount of $26,911.30. Williams requested and received interim distributions from the estate, totaling $7,400. The final distribution of the remaining $19,511.30 was made on July 14, 2010, from which Williams paid himself $4,500 to repair vehicles that T.W. had supposedly damaged. Over the next month, Williams made 66 additional withdrawals and debits from the account and, by the end of September 2010, the balance of these funds was $648. One month later only $4.61 remained.

¶7     Concerned that Williams was mishandling T.W.'s funds, Carl's wife contacted the Missoula Police Department. Detective Andy Roy conducted an investigation into Williams' use of the funds. Roy interviewed Williams, who stated he had used T.W.'s Social Security benefits to help pay expenses such as car insurance, car payments, rent, food, and power. However, Williams was unable to account for the difference between the monthly benefit T.W. received and the amount withdrawn to help with expenses. When Detective Roy asked Williams to provide receipts to demonstrate how the money was used, Williams said they had been ruined or lost after being placed in a storage facility.

¶8     Regarding the estate proceeds, Williams told Roy that he had thought it would be beneficial for T.W. to purchase vehicles, fix them, and then sell for a profit. To this end, after taking the $4,500 for car repairs, $1,000 of which Williams told Roy was for a personal loan to himself from T.W., Williams purchased a Nissan Altima, a Chevy

3

Tahoe, a Toyota Camry, a Honda Accord, and a Nissan Pathfinder with T.W.'s funds. Williams was unable to provide Roy with documentation of these expenditures and Roy was unable to find any evidence indicating those vehicles had been sold for a profit or benefitted T.W. in any way.

¶9 Williams told Roy he had borrowed funds from T.W. to purchase several other items, including $1,000 for a washer and dryer, $1,000 to repair snowmobiles, $1,000 for car tires and rims, and $400 for a flat-screen television, although none of the funds had been repaid. Williams stated his wife had used $1,000 of T.W.'s money for a trip to Seattle, and that he had used about $750 for a trip to Washington that T.W. did not attend. Williams maintained he had spent between $4,000 and $5,000 on tutoring for T.W. Upon investigation, Roy learned that Carl had paid for this tutoring. Williams was charged with theft, a felony, in violation of § 45-6-301, MCA. During trial, defense counsel did not object to any of the State's proposed jury instructions. Williams testified and contradicted many of the statements he allegedly made to Detective Roy, but was found guilty. The District Court, finding Williams to be "a fast-talking conman," sentenced him as a persistent felony offender to a term of 25 years at Montana State Prison, with 15 suspended, and ordered him to pay restitution in the amount of $25,000. Williams appeals.

## STANDARDS OF REVIEW

¶10 We review jury instructions in criminal cases "to determine whether the instructions as a whole fully and fairly instruct the jury on the applicable law." *State v.*

4

*Myran*, 2012 MT 252, ¶ 16, 366 Mont. 532, 289 P.3d 118 (citation omitted). District courts are given broad discretion when instructing a jury, and "reversible error will occur only if the jury instructions prejudicially affect the defendant's substantial rights." *Myran*, ¶ 16 (citation omitted).

¶11 Ineffective assistance of counsel claims reviewed on direct appeal present a mixed question of law and fact, which this Court reviews de novo. *State v. Johnston*, 2010 MT 152, ¶ 7, 357 Mont. 46, 237 P.3d 70.

## DISCUSSION

¶12 1. *Did the District Court commit plain error by failing to instruct the jury that the State was required to prove Williams acted with the purpose to deprive?*

¶13 Under § 45-6-301(1)(a), MCA, theft is committed when a person "purposely or knowingly obtains or exerts unauthorized control" over the property of the owner "and has the purpose of depriving the owner of the property." "Deprive" is defined in § 45-2-101(20)(a)-(b), MCA, as: "to withhold the property of another" or "to dispose of the property of another and use or deal with the property so as to make it unlikely that the owner will recover it."

¶14 Williams argues that Instruction No. 9 was incorrect and warrants a new trial under plain error review. The court instructed the jury that, to convict Williams of theft, the State needed to prove the following elements:

1. That [T.W.] was the owner of funds from the estate of [his grandmother];

**AND**

5

  2. That the Defendant purposely or knowingly obtained or exerted unauthorized control over the said funds;

**AND**

  3. That the value of the funds over which the Defendant exerted unauthorized control exceed $1500.00.

This instruction deviates from the model jury instruction, which includes a fourth element of "with the purpose of depriving the owner of the property," consistent with § 45-6-301(1)(a), MCA. Williams argues this "purpose of depriving" element required the State to prove he had a specific intent and that the given instruction reduced the State's burden of proof and "affirmatively told the jury to find Mr. Williams guilty if the State proved an incomplete list of the elements." Williams argues that reducing the State's burden violates due process and requires plain error review. Williams relies on *State v. Lundblade*, 191 Mont. 526, 625 P.2d 545 (1981), where a jury, in a felony theft case, was not given an instruction listing the elements of the offense. *Lundblade*, 191 Mont. at 531, 625 P.2d at 548. There, we invoked plain error review and reversed the conviction, noting there was "no way of determining" if the jurors were able to infer the statutory elements of the crime from the Information and, thus, the defendant may have been deprived of a fair trial. *Lundblade*, 191 Mont. at 531, 625 P.2d at 548.

¶15 In response, the State argues that the jury instructions, when taken as a whole, fully and fairly instructed the jury on the applicable law. It notes that Instruction No. 8

instructed the jury on all of the elements of felony theft.[1] The State argues that, contrary to Williams' characterization, Instruction No. 9 did not affirmatively tell the jury to convict him based upon incomplete proof of elements, but simply omitted an element that Instruction No. 8 included. The State offers that, when the instructions are viewed as a whole, the case does not merit plain error review. It also argues that Williams' purpose to deprive T.W. and the conviction itself were supported by overwhelming evidence, rendering any error harmless.

¶16 In order to obtain plain error review of an unpreserved issue, "an appealing party must (1) demonstrate the claimed error implicates a fundamental right and (2) firmly convince this Court that failure to review would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial proceedings, or compromise the integrity of the judicial process." *State v. Carnes*, 2015 MT 101, ¶ 13, 378 Mont. 482, 346 P.3d 1120. We invoke plain error review sparingly, on a case-by-case basis, according to narrow circumstances, and by considering the totality of the circumstances. *State v. Wilson*, 2011 MT 277, ¶ 16, 362 Mont. 416, 264 P.3d 1146.

¶17 We decline to exercise plain error review of Williams' challenge. While Instruction No. 9 was clearly defective, the jury instructions as a whole included the "purpose to deprive" element of the charged offense, which contrasts *Lundblade*, where the jury was not instructed regarding the elements of theft. *Lundblade*, 191 Mont. at 531,

---

[1] Instruction No. 8 stated: "A person commits the offense of theft if the person purposely and knowingly obtains or exerts unauthorized control over property of the owner, and has the purpose of depriving the owner of the property."

7

625 P.2d at 548. Further, the evidence presented by the State was overwhelming and there is little doubt the jury had no reasonable doubt that Williams had acted with the purpose to deprive T.W. of his funds. Williams quickly raided and decimated T.W.'s inheritance, and had little or nothing for T.W.'s benefit to show for it. We conclude that failure to review this issue will not implicate Williams' entitlement to due process, or compromise the integrity of the judicial process, and we decline to exercise review.

¶18    *2. Did Williams' counsel render ineffective assistance by failing to object to the erroneous jury instruction?*

¶19    Williams argues alternatively that, by failing to timely object to the jury instructions as given by the court, his counsel rendered ineffective assistance. He argues that "there was no plausible justification for defense counsel to allow the State to convict Mr. Williams without requiring the jury to find the State proved the 'purpose of depriving' mental state element," and that he was prejudiced by the error because the State was thus permitted to argue that Williams had essentially admitted to the offense because of his admission to using some of T.W.'s money.

¶20    The Sixth Amendment of the U.S. Constitution and Article II, Section 24 of our own constitution guarantee defendants the right to effective assistance of counsel in criminal cases. We analyze ineffective assistance of counsel claims using the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, 97 P.3d 1095. To prevail on such a claim, a defendant must demonstrate his counsel's performance was deficient or fell below an objective standard of reasonableness and establish prejudice by demonstrating a reasonable probability that,

8

but for counsel's errors, the result of the proceeding would have been different. *Kougl*, ¶ 11. "We need not address both prongs if a petitioner fails to establish either prong." *Golden v. State*, 2014 MT 141, ¶ 15, 375 Mont. 222, 326 P.3d 430.

¶21 We reject the claim under the second prong. For the reasons we have declined to exercise plain error review, we similarly conclude there is not a reasonable probability that, but for any error in failing to object to the instruction, the result of the proceeding would have been any different. The instructions as a whole provided all of the elements of the charge for the jury, and the evidence of Williams' purpose to deprive T.W. of his inheritance was overwhelming. Williams has not established a claim for ineffective assistance of counsel.

¶22 Affirmed.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT