FILED

12/20/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0636

DA 14-0636

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 335

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

JERALD NUESSLE,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DC 13-47
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Chief Appellate Defender, Lisa S. Korchinski, Assistant
            Appellate Defender, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Mark W. Mattioli, Assistant
            Attorney General, Helena, Montana

            Robert Zimmerman, Sanders County Attorney, Amy Kenison, Deputy
            County Attorney, Thompson Falls, Montana

Submitted on Briefs:  October 26, 2016

Decided:  December 20, 2016

Filed:

_____
              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Jerald Nuessle (Nuessle) appeals the judgment entered by the Twentieth Judicial Court, Sanders County, convicting him of felony Obstructing Justice under § 45-7-303(2)(a), MCA.  We affirm and restate the issues as follows:

*1. Did the District Court improperly instruct the jury, committing plain error?*

*2. Was defense counsel ineffective for failing to submit a jury instruction defining the statutory term "knowing"?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Shelley Nelson (Nelson), Nuessle's former girlfriend, stole a vehicle in Lewistown and drove it to Thompson Falls.  Acting on a tip, law enforcement officers from the City of Thompson Falls, Sanders County, and the Montana Highway Patrol converged on the home of Sharon Dexter (Dexter), where Nelson and the stolen vehicle were reported to be.

¶3    Dexter, her son, John Dexter, Nuessle, and Nelson were in the Dexter residence when police arrived.  Two officers approached the front door of the residence while a third officer took a position near the back door.  One officer heard people running inside the house.  The two officers at the front door advised Dexter they had a warrant for Nelson's arrest, and asked if Nelson was inside.  Dexter answered that she believed Nelson was inside and gave permission to the officers to enter and search for Nelson.

¶4    Dexter led officers through the living room and down the hallway to the bedrooms.  Upon arriving at the back bedroom, the officers encountered Nuessle, who was sitting on a bed.  Nuessle reported that Nelson had fled out the back door.  However,

2

the officer stationed outside the back door stated that Nuessle had looked outside the door, observed the law enforcement presence, and retreated back inside the residence. No one else exited the residence. Police located Nelson underneath the headboard of the bed upon which Nuessle had been sitting, and arrested her.

¶5 Nelson initially told officers that Nuessle was not involved in hiding her from police. She later admitted that she hid from officers, knowing law enforcement was looking for her, and that Nuessle had aided her in hiding, including telling officers that she had fled from the residence, which was not true. Nelson explained that she had initially lied about Nuessle's involvement because she was "covering for [Nuessle]" and "didn't want him to get in trouble."

¶6 Nuessle was charged with Obstructing Justice under § 45-7-303(2)(a), MCA, which provides that "[a] person commits the offense of obstructing justice if, knowing another person is an offender, the person purposely: (a) harbors or conceals an offender." Nelson pled guilty to theft charges and testified at Nuessle's trial, stating:

> [Nuessle] came running in from the kitchen area and he said, oh shit, let's hide, let's hide you, you know, let's hide you; run straight back to his bedroom. He lifted up part of the bed to help me under it. I crawled under. He put it back down, and I said, oh, they're going to know I'm here obviously if you don't throw some of my stuff under here. So he threw some of my stuff under there and hid me under the bed. And then he sat on the bed.

Nuessle also testified, stating that he did not know Nelson had stolen the pickup, but, rather, was under the impression Nelson had borrowed the pickup from a friend. He denied knowing that Nelson was under the bed.

3

¶7     The jury instructions included the following:

> Instruction No. 8
> A person commits the offense of obstructing justice if, knowing a person is an offender, he purposely harbors or conceals an offender.
>
> Instruction No. 9
> To convict the Defendant of the charge of obstructing justice, the State must prove the following elements:
>   1. That the Defendant knew that Shelly Nelson was an offender; AND
>   2. That the Defendant harbored or concealed Shelly Nelson.
> AND
>   3. That the Defendant acted purposely.

The instructions defined "purposely" but did not separately define "knowing" or "knew." Nuessle did not offer an instruction defining these terms. Nuessle was convicted by the jury. He appeals.

## STANDARDS OF REVIEW

¶8     We review jury instructions in criminal cases to determine whether the instructions as a whole fully and fairly instruct the jury on the applicable law. *State v. Williams*, 2015 MT 247, ¶ 10, 380 Mont. 445, 358 P.3d 127 (citing *State v. Myran*, 2012 MT 252, ¶ 16, 366 Mont. 532, 289 P.3d 118).

¶9     Claims of ineffective assistance of counsel that are reviewed on direct appeal present mixed questions of law and fact, which we review *de novo*. *State v. Root*, 2015 MT 310, ¶ 8, 381 Mont. 314, 359 P.3d 1088; *State v. Chafee*, 2014 MT 226, ¶ 11, 376 Mont. 267, 332 P.3d 240 (citing *State v. Ugalde*, 2013 MT 308, ¶ 28, 372 Mont. 234, 311 P.3d 772).

4

**DISCUSSION**

¶10    *1. Did the District Court improperly instruct the jury, committing plain error?*

¶11    Nuessle argues that "the failure to include a jury instruction defining the 'knowing' element of [O]bstructing [J]ustice relieved the State of its burden to prove Nuessle was aware that [Nelson] was an offender," and, thus, a requisite mental state was not established and his due process rights were violated. Because neither an objection was made nor an instruction offered by his counsel, Neussle asks that this Court exercise plain error review or, alternatively, conclude his counsel rendered ineffective assistance. Neussle asks that his trial be vacated and a new trial ordered. The State responds that plain error review is inappropriate "because the jury was instructed regarding all of the elements of the offense of obstructing justice" and, therefore, Nuessle's due process rights were not violated. Further, the State argues the meaning of the terms "knowing" and "knew" are easily comprehended by jurors and Nuessle was not prejudiced by the lack of a definitional instruction. The State contends it was not relieved of proving an element of the offense, and clearly proved that Nuessle knew or was aware that Nelson was an offender.

¶12    Obtaining plain error review of unpreserved issues requires the appellant to: (1) show "the claimed error implicates a fundamental right"; and (2) "firmly convince this Court that failure to review would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial proceedings, or compromise the integrity of the judicial process." *Williams*, ¶ 16 (citing S*tate v. Carnes*, 2015 MT

5

101, ¶ 13, 378 Mont. 482, 346 P.3d 1120); *accord State v. Favel*, 2015 MT 336, 381 Mont. 472, 362 P.3d 1126. "We invoke plain error review sparingly, on a case-by-case basis, according to narrow circumstances, and by considering the totality of the circumstances." *Williams*, ¶ 16 (citing *State v. Wilson*, 2011 MT 277, ¶ 16, 362 Mont. 416, 264 P.3d 1146). Finally, we bear in mind the appellant "carries the burden of proof." *Favel*, ¶ 27 (citing *State v. Hart*, 2000 MT 332, ¶ 52, 303 Mont. 71, 15 P.3d 917).

¶13 Obstructing Justice by harboring or concealing an offender, § 45-7-303(2)(a), MCA, uniquely references two mental states. However, the general mental state, formerly known in Montana law as the *mens rea*, for commission of this crime is "purposely." *Black's Law Dictionary* defines *mens rea* as: "The state of mind that the prosecution, to secure a conviction, must prove that a defendant had *when committing* a crime. . . . [*Mens rea*] describes the state of mind or inattention that, *together with its accompanying conduct*, the criminal law defines as an offense." *Black's Law Dictionary* 1134-35 (Bryan A. Garner ed., 10th ed. 2014) (emphasis added). Thus, the harboring or concealing conduct criminalized by § 45-7-303(2)(a), MCA, must be committed purposely. In addition, the elements of the offense require the defendant to know a particular fact: that the person he was harboring was an offender.[1]

¶14 The record reveals the defense addressed the elements of Obstructing Justice in its opening statement, and both sides addressed the elements during their closing arguments.

---

[1] "Offender" is defined as "a person who has been or is liable to be arrested, charged, convicted, or punished for a public offense." Section 45-7-303(1), MCA.

The jury was properly instructed on all of the elements of the offense, including the requirement that Neussle knew Nelson was an offender. Even without an instruction defining "knowing," the State was not relieved of its burden to prove the "knowing" element, and the jury was well aware of the burden. We would note that a jury "need not be instructed on words or phrases of common understanding or meaning." *State v. Crisp*, 249 Mont. 199, 205, 814 P.2d 981, 984 (1991) (citing *State v. Gould*, 216 Mont. 455, 477, 704 P.2d 20, 34 (1985)).

¶15 We decline to undertake consideration of the merits of the instruction issue pursuant to the plain error doctrine because failure to review would not "result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial proceedings, or compromise the integrity of the judicial process." *Williams*, ¶ 16.

¶16 *2. Was defense counsel ineffective for failing to submit a jury instruction defining the statutory term "knowing"?*

¶17 We evaluate ineffective assistance of counsel claims under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) and *Whitlow v. State*, 2008 MT 140, 343 Mont. 90, 183 P.3d 861. A defendant must show that his attorney's performance was deficient by demonstrating that it fell below an objective standard of reasonableness, and that the attorney's deficient performance prejudiced the defense. *Whitlow*, ¶ 10. "A defendant must satisfy both prongs of this test in order to prevail on an ineffective assistance of counsel claim." *Whitlow*, ¶ 11. "[T]he proper measure of counsel's performance is objective reasonableness." *Whitlow*, ¶ 12.

¶18   Nuessle argues that his trial counsel was ineffective because she failed to propose a jury instruction defining "knowing" or "knew." Nuessle contends these actions reduced the State's burden as to the mental state element of the offense and that there was no plausible justification for trial counsel's failure to submit the instruction. The State responds that Nuessle's defense counsel performed reasonably and within established professional norms. We agree.

¶19   Within the stated elements of the offense, the word "knowing," as explained above, fulfilled a limited purpose that was commonly understood by the jurors, and was emphasized by the parties during trial. The State's burden was not reduced by the absence of a specific instruction defining the term, and defense counsel's performance was not deficient for failing to offer such an instruction. Therefore, Nuessle has not established that he received ineffective assistance of counsel.

¶20   Affirmed.


                                                    /S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA


8