FILED

11/21/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0629

DA 15-0629

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 285

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

BARTON HOWARD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 14-37
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad M. Wright, Chief Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General; Helena, Montana

          Bernard Cassidy, Lincoln County Attorney; Libby, Montana

Submitted on Briefs:  September 20, 2017

Decided:  November 21, 2017

Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Barton Howard (Howard) appeals from the judgment entered by the Nineteenth Judicial District Court, Lincoln County, convicting him of Criminal Endangerment under § 45-5-207, MCA. We affirm, addressing the following issues:

1. *Is Howard's claim of judicial bias reviewable for plain error?*

2. *Is Howard's claim of ineffective assistance of counsel reviewable on direct appeal?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On March 31, 2014, at around 11:45 p.m., Debbie Wiherski called 911 to report her 72-year-old husband, Jerome Wiherski (Wiherski), had been attacked at their home. Lincoln County Sheriff's officers responded to the residence and observed Wiherski had suffered substantial injuries, including a swollen eye, broken nose, head injuries, and a swollen right abdomen. Wiherski told officers that someone had knocked on his door and, when he opened it, pulled him onto the porch and beat him, then kicked him while he was on the ground. The officers established that Howard was the potential attacker, and drove to his residence. They interviewed Howard without giving him a *Miranda*[1] warning. Howard admitted attacking Wiherski in retaliation for Wiherski's alleged attempt to sexually assault Howard's partner. Howard confirmed that Wiherski was on the ground during the attack and did not fight back. This conversation was captured on an officer's pocket recorder.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶3     The State charged Howard with aggravated assault, and the Honorable James B. Wheelis presided over the case. On May 5, 2014, Noel Larivee from the Office of the State Public Defender (OPD) appeared as Howard's counsel at the arraignment. At the omnibus hearing, Larivee raised the affirmative defense of justifiable use of force. On June 30, Scott Hilderman, private counsel, filed a notice of substitution of counsel as Howard's new counsel of record. Hilderman filed a motion to suppress, arguing Howard's statements to police were not voluntary and his *Miranda* rights had been violated. Hilderman subsequently moved to vacate the hearing on the motion and instead requested a change of plea hearing. However, at the change of plea hearing on January 5, 2015, Howard changed his mind and decided not to change his plea to the charge. Thus, the matter was put back on the trial calendar.

¶4     On January 15, Hilderman filed an unopposed motion to withdraw as counsel, to which Howard had consented. The District Court granted the motion to withdraw, and on January 26 conducted a hearing to discuss Howard's representation. The District Court asked, "Mr. Howard, as far as I recall, you are now representing yourself, correct?" Howard replied, "Yes, Sir." The District Court offered only a brief admonition about some of the dangers of self-representation, following which Howard decided he wanted representation by a public defender.[2] He thereafter filed a motion for appointment of

---

[2] As part of his judicial bias argument, Howard cites the District Court's failure to fully advise him at this appearance about the dangers of self-representation, pursuant to *Faretta v. California*, 422 U.S. 806 (1974) (requiring a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.") (citation omitted). However, Howard thereafter elected to be represented by counsel and not represent himself, and thus the advisory issue was satisfactorily resolved. It is not raised as an independent issue on appeal.

counsel. However, at a March 2 status conference, Howard changed his mind, stating he only wanted standby counsel. The District Court told Howard that he either had to represent himself or be represented by an attorney from the OPD. Howard chose to represent himself, which the District Court permitted following a warning to Howard about the dangers of self-representation based upon *Faretta*.

¶5 Howard filed a Motion to Compel Discovery, claiming difficulty getting his case files from prior counsel, although he did not explicitly claim ineffective assistance of counsel. The State filed for issuance of *Gillham*[3] protective orders to allow Hilderman and Larivee to advise the Court what discovery information they had provided to Howard. Over Howard's objection, the District Court issued the *Gillham* orders and heard testimony from Larivee, who testified he provided Howard all the discovery materials in his possession as well as copies of correspondences between him and Howard. During the hearing, Larivee directly questioned Howard to confirm that Larivee provided all the discovery documents to Howard, during which Howard confirmed that Larivee's testimony was correct and stated that he was more concerned with Hilderman's representation than Larivee's representation.

¶6 Representing himself, Howard filed a motion to suppress his statement to law enforcement given at his residence, wherein he reasserted the *Miranda* claim and added an allegation that the State had tampered with the audio recording. Howard included a report from Primeau Forensics, which opined that, although the recording of Howard's statement might have been part of a longer recording session, it could not determine whether there

---

[3] *In re Gillham*, 216 Mont. 279, 704 P.2d 1019 (1985).

had been interruptions in recording, and that an examination of the original recording may provide additional information. The court held a suppression hearing on the motion and appointed counsel to represent Howard for purposes of the hearing. Attorney Charles Sprinkle appeared as counsel.[4] The court thereafter denied the motion, finding Howard's statement to police was admissible because he was not in custody for *Miranda* purposes when he admitted to assaulting Wiherski. The court also found the recording had not been edited and concluded sufficient foundation supported its admission.

¶7     Howard also filed a motion to dismiss, alleging the Information failed to establish probable cause he committed aggravated assault. The court denied the motion, concluding there was probable cause that Howard committed the offense.

¶8     On March 19, OPD notified the court that Timothy Baldwin would thereafter represent Howard. Baldwin submitted several pleadings and motions that were opposed by the State, and for which the District Court conducted a hearing attended by Baldwin but not by Howard. The District Court ruled it would exclude Howard's audio recording expert because the expert could not verify that the recording had been altered in any way. Baldwin's motion to preclude the testimony of physician assistant Joseph Chopyak concerning the nature of Wiherski's injuries, because he was not qualified to offer an opinion, was denied by the District Court, which found that the "scope of Chopyak's licensure in his medical practice does not limit his capacity to testify as an expert on the scope, extent, nature, course, and duration" of Wiherski's injuries. Baldwin filed an

---

[4] OPD was then determining Howard's eligibility for public defender services pursuant to his pending application.

5

amended witness list, naming Howard's father, Robert Howard, with the explanation that Robert would testify "regarding the time of day that the defendant was with him on the date of the alleged assault," an apparent alibi defense. The State moved to exclude alibi evidence because the defense was not raised at the omnibus hearing. Baldwin did not object to the State's motion, but stated that Howard was requesting that he pursue the issue. Baldwin then made the following statement during the hearing:

> **COURT:** . . . [O]n the State's motion about precluding the Defendant from raising an alibi defense and calling Robert Howard, any argument about that?
>
> **BALDWIN:** Your Honor, I need to put something on the record so the Court can make a ruling based on what I am presenting. I don't object to the State's motion with regard to an alibi. Without revealing client/attorney confidential information, I need to put the Court on notice that there is a potential that Mr. Howard will want to testify at the trial regarding an alibi. I am not going to ask the questions regarding an alibi, and so if Mr. Howard insists on testifying in that regard, I would have to ask the Court that he be able to testify in a narrative fashion. Because, I again, I'm not going to ask those kinds of questions, nor am I going to be arguing that defense theme at trial. But I think that as a matter of record the Court probably has to make a ruling as to if he does intend to do that what the Court will instruct either him or the jury on that issue.
>
> **COURT:** I don't know if I would let him be called as a witness based on the information that you have offered that's been offered. And I understand that you have a duty to your client to proceed, but on the other hand, my rulings at this stage would be that an alibi is too late. So if he intends, makes it known that he intends to testify regarding alibi, then I would keep him off the stand.
>
> **BALDWIN:** Okay.
>
> **COURT:** If there are other issues he might want to testify about, I don't know what they would be but that would be different.

¶9    On May 19, Baldwin requested a hearing because Howard wanted to represent himself and have Baldwin assigned as standby counsel. On May 21, the court held a

hearing. Howard was late and the District Court began the proceeding in his absence. Howard ultimately appeared and confirmed that he wanted to represent himself. The District Court explained that if, on the day of trial, Howard wanted to represent himself, standby counsel would not be permitted. The District Court provided *Faretta* warnings about the rights Howard was waiving by proceeding *pro se*, reminded him of Baldwin's limited role, and confirmed Howard's decision to represent himself was knowing and voluntary.

¶10 On May 26, the jury trial began. During the pretrial conference, the State moved to exclude Robert Howard's testimony because it was unable to arrange an interview with Robert. The court granted the request. Howard then notified the court he wanted Baldwin's legal representation, explaining that his self-representation was premised upon a trial strategy involving calling Robert to testify, which had now been denied. Baldwin was called to again represent Howard.

¶11 Before the conclusion of *voir dire*, the parties reached a plea agreement that called for the State to amend the charge to felony criminal endangerment and Howard to enter a no contest plea, and preserved Howard's right to challenge the court's pretrial rulings on appeal. Following a plea colloquy, the court accepted Howard's no contest plea and set sentencing for August 3.

¶12 On June 1, Baldwin requested a hearing to address Howard's latest request to represent himself and to withdraw his plea. On June 8, the court held a hearing and Howard explained that he had changed his mind about these matters since the hearing was set: he now wanted Baldwin to continue as his attorney, and his plea to remain.

¶13    On June 12, Baldwin filed a motion addressing the following matters:  a renewed request by Howard to withdraw his plea; appointment of new counsel; and a possible *Gillham* order.  Baldwin explained that he could not "in good faith" represent Howard regarding his change of plea, and suggested that new counsel be appointed.  Baldwin sought a *Gillham* order permitting him to testify in the event Howard asserted ineffective assistance of counsel against him as a basis for withdrawal of the plea.  At a hearing on June 22, Howard asserted his plea should be withdrawn because he did not understand he would be found guilty upon a no contest plea.  The District Court denied Howard's motion to withdraw his plea, reasoning that he voluntarily, knowingly, and willingly entered his plea.  The District Court ordered Howard to appear at sentencing.  Baldwin remained as counsel.

¶14    Prior to sentencing, Howard filed two *pro se* motions seeking to represent himself and a *pro se* motion asking to withdraw his guilty plea.  At the August 10 hearing in aggravation and mitigation of sentence, Howard retracted his request to proceed *pro se*, stating it was merely a strategy to get *pro se* documents into court.  Howard then asked the court to reconsider his request to withdraw his plea, but had no additional evidence to offer, so the court denied the request.

¶15    At sentencing, Baldwin advocated for a deferred sentence for Howard by emphasizing what he thought were mitigating circumstances, including that Wiherski had "made a pass" on Howard's partner.  Baldwin contended that witnesses had "exaggerated" Howard's conduct in the case.  In response, the District Court stated, "You do have to recall that I saw Mr. Wiherski . . . a few days [after the assault]."  Baldwin replied, "Right, Your

8

Honor, and I recognize that. But I think that—and those injuries I think were fairly, you know, exact." Baldwin noted that the initial injuries were not as serious as later developments that involved Wiherski seeking medical care for bleeding in the brain. The court agreed, stating that he would "not consider Mr. Chopyak's testimony about the later consequences of the injuries to Mr. Wiherski" in sentencing Howard. The District Court imposed a ten-year sentence to the Department of Corrections, with five years suspended.

¶16    At no time during the proceedings did Howard state a claim of judicial bias against the District Court. Howard appeals.

## STANDARD OF REVIEW

¶17    When a defendant raises the plain error doctrine to request our review of issues that the defendant did not raise before the district court, our review is discretionary. *State v. Stutzman*, 2017 MT 169, ¶ 13, 388 Mont. 133, 398 P.3d 265 (citation omitted).

¶18    Claims of ineffective assistance of counsel that are reviewed on direct appeal present mixed questions of law and fact, which we review *de novo*. *State v. Nuessle*, 2016 MT 335, ¶ 9, 386 Mont. 18, 385 P.3d 952 (citations omitted).

## DISCUSSION

¶19    1. *Is Howard's claim of judicial bias reviewable on appeal for plain error?*

¶20    Howard raises no claims of substantive legal error on appeal, despite the detailed account of his trial proceedings set forth in his briefing. Instead, he asserts judicial bias, in that "the presiding judge created an atmosphere of hostility against Howard as he was trying to test the State's case and present a defense." Howard's argument is based upon the District Court's comments, rulings, and his perception that he was treated adversely.

9

¶21    His appellate theory notwithstanding, the record requires Howard to acknowledge, in understatement, that he "demanded more from the criminal justice system than the average defendant."  More accurately, Howard was a difficult litigant who abused the judicial system, wasted judicial resources, imposed unreasonable burdens upon lawyers and personnel, and mocked the core judicial purpose of seeking truth.  It should not be surprising that his appeal is an attempt to shift all attention away from his own actions and place blame elsewhere.

¶22    Howard argues we should exercise plain error review of his claim of judicial bias, which he bases upon the District Court's: (1) granting of one of Howard's motions to represent himself without sufficiently advising him of the dangers of self-representation under *Faretta*; (2) granting the State's motion for issuance of *Gillham* orders; (3) subjecting Howard to requirements, when he was representing himself, that went beyond those imposed on other litigants, such as requiring him to turn over his expert report before it was established the expert would be called to testify; (4) denying Howard's motions to withdraw his no contest plea; and (5) during sentencing, referring to having seen Wiherski's injuries while presiding over the protection proceeding.  Howard asks that his conviction be vacated and a new trial ordered.

¶23    Howard did not object or claim judicial bias or impropriety before the District Court, so he did not preserve the issue for appeal.  "A claim for disqualification of a judge must be brought within a reasonable time after the moving party learns the facts forming the basis for a claim that the judge should be disqualified. . . .  If it is not brought within a reasonable time, the claim is waived."  *State v. Strang*, 2017 MT 217, ¶ 18, 388 Mont. 428,

10

401 P.3d 690 (citations omitted). Generally, this court does not address issues raised for the first time on appeal. "We invoke plain error review sparingly, on a case-by-case basis, according to narrow circumstances, and by considering the totality of the circumstances." *Nuessle*, ¶ 12. Obtaining plain error review of an unpreserved issue requires the appellant to: "(1) demonstrate the claimed error implicates a fundamental right and (2) firmly convince this Court that failure to review would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial proceedings, or compromise the integrity of the judicial process." *State v. Williams*, 2015 MT 247, ¶ 16, 380 Mont. 445, 358 P.3d 127 (citing *State v. Carnes*, 2015 MT 101, ¶ 13, 378 Mont. 482, 346 P.3d 1120). "When the circumstances of a case do not warrant application of the plain error doctrine, we need not address the merits of the alleged error." *Stutzman*, ¶ 23.

¶24 Howard's assertions of judicial bias are largely based upon the District Court's rulings. However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994) (citation omitted); *see also* § 3-1-805(1)(b), MCA (an affidavit of disqualification is deemed not to have been made in good faith if it is based solely on rulings in the case).

¶25 Further, we question whether District Court made any *Faretta* error. At the January 26, 2015 hearing, Howard ultimately decided not to represent himself, so *Faretta* warnings may not have been required. *See State v. Insua*, 2004 MT 14, ¶ 19, 319 Mont. 254, 84 P.3d 11 ("[i]n applying the *Faretta* standard, we have repeatedly held that a trial court is not required to advise a defendant specifically of the dangers and disadvantages of self-representation as long as the court makes inquiry of the defendant to the extent it deems

11

necessary to ensure that the defendant's waiver of counsel is voluntary, knowing, and intelligent.").[5] While we have cautioned about the use of *Gillham* proceedings outside of the postconviction context, *State v. Cheetham*, 2016 MT 151, ¶ 29, 384 Mont. 1, 373 P.3d 45, *State v. Aguado*, 2017 MT 54, ¶ 25, 387 Mont. 1, 390 P.3d 628, we have not adopted an absolute bar to its use in trial proceedings. The considerable demands Howard placed upon his attorneys, his claims of ineffectiveness, and his repeated dismissals of his counsel may have put the conduct of the attorneys at issue. Regarding its comments about Wiherski's injuries, the District Court subsequently dialogued with counsel about the issue and agreed to limit consideration of the injuries for purposes of sentencing to Chopyak's observations.

¶26     Howard's assertion of bias is largely premised upon judicial rulings or upon a record that does not convince us that his claim implicates a fundamental right, or that failure to review the claim would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial proceedings, or compromise the integrity

---

[5] We note that even if *Faretta* warnings were required when Howard subsequently decided to represent himself, the court's *Faretta* warnings, although brief, explained the hazards of self-representation and were likely sufficient. Further, Howard's multiple *pro se* filings and active participation in his own defense, at times with and without the aid of counsel, are strong evidence of his knowing, voluntary, and intelligent waiver of counsel. *See United States v. Hantzis*, 625 F.3d 575 (9th Cir. 2010). In *Hantzis*, the defendant hired, or was appointed, four different attorneys and, while he was represented, filed multiple *pro se* documents. Hantzis later began representing himself *pro se*, and the district court conducted a brief colloquy that explained the hazards of self-representation. The next day, Hantzis changed his mind and stated he wanted his original attorney to continue representing him. Soon thereafter, he filed another motion to proceed *pro se*. *Hantzis*, 625 F.3d at 577-79. The appellate court found the colloquy adequate and Hantzis' waiver of counsel to be knowing, voluntary, and intelligent because he filed multiple *pro se* documents and "actively and personally participated in his own defense from the outset of the case, sometimes with, and sometimes without, the aid of counsel." *Hantzis*, 625 F.3d at 580. Howard does not claim that he was denied the right to counsel based on an involuntary waiver, but instead alleges generally that an inadequate *Faretta* warning is evidence of bias.

of the judicial process. *Williams*, ¶ 16. Therefore, we decline to undertake consideration of the merits of the bias allegation pursuant to the plain error doctrine.

¶27 *2. Is Howard's claim of ineffective assistance of counsel reviewable on direct appeal?*

¶28 Howard argues that his appointed counsel presented testimony, evidence, and confidential information in violation of his interests, thus violating their duty of loyalty, citing to Baldwin's statement in open court about his alibi defense. The State argues that the record is not sufficiently developed to determine whether counsel has been ineffective.

¶29 The right to counsel in a criminal proceeding is protected by the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, as well as Article II, Section 24 of the Montana Constitution. *State v. Stratton*, 2017 MT 112, ¶ 9, 387 Mont. 384, 394 P.3d 192. Before reaching the merits of an ineffective assistance claim on direct appeal, this Court must determine whether the allegations are properly before it. *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095. We review claims of ineffective assistance of counsel on direct appeal if the claims are based solely on the record. *State v. Clary*, 2012 MT 26, ¶ 12, 364 Mont. 53, 270 P.3d 88. Consequently, "[I]f the record does not demonstrate 'why' counsel did or did not take an action which is the basis of the claim, the claim is more suitable for a petition for postconviction relief where a record can be more fully developed." *Cheetham*, ¶ 14 (citations omitted).

¶30 Howard argues Larivee improperly made statements about discovery related to the defense investigator and improperly directly questioned Howard during a *Gillham* proceeding. The record is unclear why Larivee made any statements beyond specifying all the discovery materials he provided to Howard. Howard also argues his counsel Sprinkle

13

was "unprepared" and "could not have developed any loyalty towards [Howard] given such a limited appointment." The record does not establish Sprinkle was unprepared nor does it address his loyalty to Howard, and we note that Sprinkle was apparently appointed only for the limited purpose of the suppression hearing. Finally, Howard argues his counsel Baldwin improperly informed the court "Mr. Howard" was going to commit perjury by providing information on a potential alibi defense. The State argues that, taken in context, the statement is referring to Robert Howard, the Defendant's father, and not Howard. Because the substance of the exchange is not clear from the record, the record is insufficient to allow review on direct appeal.

¶31 Howard's ineffective assistance of counsel claims are not factually established in the record before us. Therefore, we cannot address them on direct appeal. Howard may pursue these claims in a petition for postconviction relief.

¶32 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR