FILED

09/15/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0160

DA 18-0160

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 234N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

BRANDON BAGNELL,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                    In and For the County of Lake, Cause No. DC 15-355
                    Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joseph P. Howard, Joseph P. Howard, P.C., Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Brad Fjeldheim, Assistant
          Attorney General, Helena, Montana

          Steven N. Eschenbacher, Lake County Attorney, Brendan D. McQuillan,
          Deputy County Attorney, Polson, Montana

                      Submitted on Briefs:  August 12, 2020

                              Decided:  September 15, 2020

Filed:

                         _____
                                  Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Brandon Bagnell appeals his conviction by a Lake County jury of felony stalking, arguing that the court failed adequately to instruct the jury with respect to the required mental state. Bagnell urges plain-error review, claiming that the instructions relieved the State of its burden to prove an element of the offense beyond a reasonable doubt. Bagnell alternatively argues that his attorney rendered ineffective assistance by failing to object to the instructional error. He seeks a new trial. We conclude on this record that the District Court's failure to instruct the jury on the definitions of "purposely" and "knowingly" does not entitle Bagnell to a new trial or demonstrate prejudice from defense counsel's performance. We accordingly affirm.

¶3     Bagnell and L.L. married in 2011 and divorced in 2015. They met "a long time ago" but hadn't "really been [together] probably for a good ten years at least" because "most of the time he's in prison." L.L., who testified that she did not want to appear at the trial because she was "afraid of the outcome, what is going to happen to me" and "afraid for my child[,]" described their relationship as "[v]ery violent[]"—she "always had a black eye." L.L. obtained two orders of protection against Bagnell. The first, which she

2

obtained in 2012, expired in 2014. She obtained the second in 2015, after realizing the first had expired. While in prison on a 2014 conviction for stalking L.L., Bagnell mailed her hundreds of violent and sexually explicit letters. L.L. reported the letters to her domestic violence advocate, Jolene Schmitz, who contacted law enforcement.

¶4 On October 2, 2015, the State charged Bagnell by information with one count of stalking. The State alleged that Bagnell "purposely or knowingly caused serious emotional distress to L.L. by repeatedly send[ing] her letters."[1] Prior to trial, the parties submitted proposed jury instructions to the District Court. None from either party contained an instruction defining "purposely" and "knowingly." Before trial began, the State submitted two additional instructions defining "purposely" and "knowingly," to which Bagnell did not object. The court informed counsel of its intent to "deal with these at the end . . . when we settle instructions." The record reflects, however—and the parties do not dispute—that everyone apparently overlooked these instructions, and they were not given to the jury with the other instructions.

¶5 After deliberating just over an hour, the jury found Bagnell guilty. The District Court sentenced Bagnell as a persistent felony offender to twenty years' imprisonment, with no time suspended. This appeal followed.

¶6 "We review jury instructions to determine whether the instructions, taken as a whole, fully and fairly instruct the jury as to the applicable law and whether the

---

[1] The court subsequently allowed the State to amend the Information to include two counts of violating an order of protection under § 45-5-626, MCA, but the State dismissed these counts before trial.

district court abused its discretion in instructing the jury." *State v. Gerstner*, 2009 MT 303, ¶ 15, 353 Mont. 86, 219 P.3d 833 (citation omitted). If the instructions are erroneous, we will reverse only if the mistake prejudicially affects the defendant's substantial rights. *Gerstner*, ¶ 15 (citation omitted). Ineffective assistance of counsel claims are mixed questions of law and fact, which we review de novo. *State v. Flowers*, 2018 MT 96, ¶ 13, 391 Mont. 237, 416 P.3d 180 (citation omitted).

¶7 Bagnell did not object to the District Court's failure to instruct the jury on the definitions of "purposely" or "knowingly," thus failing to preserve the issue for appeal. This Court may discretionarily review unpreserved claims alleging errors implicating a criminal defendant's fundamental rights under the common law plain-error doctrine. *State v. George*, 2020 MT 56, ¶ 4, 399 Mont. 173, 459 P.3d 854 (citing *State v. Akers*, 2017 MT 311, ¶ 13, 389 Mont. 531, 408 P.3d 142). The party requesting reversal because of plain error bears the burden of firmly convincing this Court that (1) the claimed error implicates a fundamental right and (2) the failure to review may lead to a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial, or may compromise the integrity of the judicial process. *George*, ¶ 5 (citations omitted).

¶8 Bagnell claims that the claimed error implicates his fundamental right to due process. *See, e.g. Carella v. California*, 491 U.S. 263, 265, 109 S. Ct. 2419, 2420 (1989) (jury instructions relieving states of the burden to prove every element of the offense beyond a reasonable doubt violate a defendant's due process rights);

4

*State v. Azure*, 2005 MT 328, ¶ 20, 329 Mont. 536, 125 P.3d 1116 ("When a criminal offense requires that a defendant act 'knowingly' [and 'purposely'], the District Court must instruct the jury on what the term 'knowingly' [and 'purposely'] means in the context of the particular crime.").

¶9     The trial court gave the following instruction defining the offense of stalking as set forth in § 45-5-220, MCA:

> A person commits the offense of stalking when he purposely or knowingly causes another person substantial emotional distress or reasonable apprehension of bodily injury or death by repeatedly: harassing, threatening, or intimidating the stalked person, in person or by mail, electronic communication, or any other action, device, or method.

It instructed the jury further that for it to find Bagnell guilty, the State must prove beyond a reasonable doubt each element of the offense, including that he "acted purposely or knowingly." The District Court's instructions properly included the elements of the charged offense and the State's obligation to prove each element beyond a reasonable doubt. But it incorrectly left out an instruction defining the terms "purposely" and "knowingly" in the context of the offense of stalking. *See Azure*, ¶ 20.

¶10     Bagnell nonetheless bears the burden to demonstrate that the unchallenged error requires a new trial. We considered a similar argument in *State v. Nuessle*, 2016 MT 335, 386 Mont. 18, 385 P.3d 952. The State charged Nuessle with obstructing justice, an offense requiring proof that he "knew" the person he harbored or concealed was an offender. The jury instructions did not define "knowing" or "knew," and Nuessle did not offer an instruction defining those terms. *Nuessle*, ¶ 7. Like Bagnell, he claimed on appeal that

5

failure to include a definition of the "knowing" element relieved the State of its burden of proof on an essential element of the offense, amounting to plain error; alternatively, he argued that his counsel was ineffective for failing to offer the appropriate instruction. *Nuessle*, ¶ 11. Because the jury instructions correctly stated all elements of the offense, "including the requirement that Nuessle knew [the person he concealed] was an offender," we declined plain-error review. "Even without an instruction defining 'knowing,' the State was not relieved of its burden to prove the 'knowing' element, and the jury was well aware of the burden." *Nuessle*, ¶ 14. We reached a similar conclusion in *State v. Williams*, 2015 MT 247, ¶ 17, 380 Mont. 445, 358 P.3d 127, declining to exercise plain-error review of a "clearly defective" jury instruction omitting the element of "purpose to deprive" in a theft charge where other instructions included all elements of the offense and the evidence was overwhelming.

¶11 Like Nuessle and Williams, Bagnell has not shown that the District Court's failure to instruct the jury on the mental state definitions would "result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial proceedings, or compromise the integrity of the judicial process." *Nuessle*, ¶ 15 (quoting *Williams*, ¶ 16). The instructions correctly recited the statutory definition of stalking and included each element of the offense the State had to prove beyond a reasonable doubt. And the State presented compelling evidence—largely taken from Bagnell's own words—that he was aware of a high probability that his letters would cause L.L. to fear for her safety or suffer

6

emotional distress.[2] George Simpson, the officer assigned to investigate the case, testified that he had reviewed Bagnell's letters—over 140 pages—and found them to be "very disturbing emotionally." Simpson read excerpts from twelve of the letters to the jury. In one, Bagnell wrote to L.L., "But I promise you this: Divorce is just a piece of paper . . . . That piece of paper is not going to keep me away and you know it." In another, he wrote, "Nothing is stopping me from coming home to see you and you can bank on that." In yet another letter, Bagnell told L.L., "No piece of paper is going to stop me from coming by in the middle of the night and sneaking in your bedroom and burglarize your [body]." Simpson testified that Bagnell enclosed his own pubic hairs in another letter to L.L. Simpson testified that Bagnell's letters made L.L. "very, very disturbed, very upset." Jolene Schmitz also testified that Bagnell's letters made L.L. "cry[,]" "shake[,]" and "constantly look at the door." L.L. testified that, when her granddaughter came to live with her in 2012, she "finally put a restraining order on [Bagnell]" in response to his threatening letters. L.L. testified that she told Bagnell that his communication upset her—"because he just makes me snap"—and that when she read his letters, "It's just like I'm having a PTSD. He just gets me off the charts. I just get high stress and I just can't do it." She described their relationship as one that was "never [] loving and normal" and was "very violent[]" because "he was always beating me up."

---

[2] We assume for the purpose of resolving this appeal that stalking is a result-based offense—as Bagnell advocates.

¶12 From this evidence, we conclude that no reasonable juror presented with Bagnell's letters could harbor reasonable doubt that he had the conscious object to cause or was aware of a high probability they would cause L.L. to fear for her safety or suffer emotional distress. The letters' plain language shows they were designed to do so. Though the instructions were defective, the error is not grounds for plain-error reversal.

¶13 Bagnell alternatively contends that trial counsel rendered ineffective assistance by failing to object to the instructional error, requiring reversal of his conviction. To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant." *Nuessle*, ¶ 17 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), and *Whitlow v. State*, 2008 MT 140, 343 Mont. 90, 183 P.3d 861). A defendant must satisfy both prongs of the *Strickland* test to prevail on a claim for ineffective assistance of counsel. *Nuessle*, ¶ 17 (citation omitted).

¶14 We conclude that Bagnell has not demonstrated prejudice from counsel's allegedly deficient performance. "To establish prejudice, the defendant must show that, but for counsel's errors, a reasonable probability exists that the result of the proceeding would have been different." *St. Germain v. State*, 2012 MT 86, ¶ 11, 364 Mont. 494, 276 P.3d 886 (citation omitted). As we have explained, in light of the evidence presented at trial— chiefly, Bagnell's explicit letters to L.L. and the impact they had on her—we are confident that the jury would not have reached a different outcome had defense counsel objected to the court's instructional error. *See St. Germain*, ¶ 11.

¶15    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.  Bagnell did not suffer an unfair trial as the result of the District Court's instructional error or prejudice from his counsel's failure to object to it. The judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JIM RICE